## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

---

**MANSI HOSPITALITY, INC.,**

      **Plaintiff,**

**v.**

**ERIE INSURANCE COMPANY,**

      **Defendant.**

**No:** _____
**JURY DEMANDED**

---

## COMPLAINT

---

COMES NOW the Plaintiff, Mansi Hospitality, by and through counsel, and submits the following for its Complaint against Erie Insurance Company:

### PARTIES AND JURISDICTION

1.　　Mansi Hospitality, Inc. ("Plaintiff") is a corporation formed under the laws of the State of Tennessee with its principal office located in Hurricane Mills, Tennessee. Plaintiff is a citizen of Tennessee.

2.　　Erie Insurance Company ("Defendant") is an insurance company conducting business in the State of Tennessee, including Humphreys County, Tennessee. Defendant is a corporation formed under the laws of the State of Pennsylvania, with its principal place of business located at 100 Erie Place, Erie, Pennsylvania. Defendant is a citizen of Pennsylvania.

3.　　This Complaint originates as the result of a storm event that caused substantial insured losses to the Insured Premises (as defined below) and Defendant's failure and refusal to promptly and fully pay Plaintiff's insurance claim and otherwise honor the terms of the subject insurance policy.

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and countries, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Insured Premises (as defined below) is situated in this District and the events giving rise to the claim upon which this action is based occurred in this District.

## FACTS

### The Policy

6. At all times relevant hereto, Plaintiff was a named insured pursuant to an insurance contract, bearing Policy No. Q61 0230904, whereby Defendant agreed to insure the two hotel structures located at and around 15415 Highway 13 South, Hurricane Mills, Tennessee (the "Insured Premises") against property damage (the "Policy"). The relevant term of the Policy is November 20, 2024 to November 20, 2025. A copy of the Policy is attached hereto as ***Exhibit 1***.

7. The Policy provided insurance coverage for direct physical loss of or damage to the Insured Premises and such other insurance coverage as specifically set forth in the Policy.

8. The Policy is an "all-risks" policy, meaning that the Policy covered all risks of direct physical loss of or damage to covered property except for those specifically excluded or limited by the Policy.

9. The Policy's coverage for the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

10. The Policy provided a limit of insurance coverage for the Insured Premises in the amount of $6,456,000.

2

11.   The Policy included a deductible of $10,000 for property damage.

12.   Pursuant to the Policy, Plaintiff paid an annual premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

<u>The Loss & Claim Investigation</u>

13.   On or about April 4, 2025, the Insured Premises was damaged by a severe windstorm event, resulting in substantial direct physical loss of or damage to the Insured Premises, including, but not limited to, its roofs, parapet caps, balcony flashing, and interior water intrusion (the "Loss").

14.   The April 4, 2025 storm was well-documented in the Humphreys County area with wide-spread winds up to 90 mph. The storm spawned an EF-1 tornado that passed within approximately 200 yards of the Insured Premises. A nearby farmers' market roof collapsed. The balcony walkway flashing at the Insured Premises blew off, tree limbs and debris were in the parking lot after the storm, the roof at the Insured Premises was damaged and wrinkled by the wind, and water intrusion occurred in numerous hotel rooms. Winds that impacted the Insured Premises were at least 65 to 75 mph.

15.   The Policy was in full force and effect at the time of the Loss.

16.   As it relates to the Loss, there is no applicable exclusion or limitation. The Loss is a compensable claim under the Policy.

17.   Plaintiff promptly reported the Loss to Defendant.

18.   Defendant assigned the Loss a claim number -- A00006696869.

19.   Defendant's adjuster inspected the Loss, and acknowledged the presence of roof damage and that the interior water damage appeared fresh.

20.     Defendant subsequently retained Donan Engineering (a "forensic engineering" firm) ("Donan") to inspect the Insured Premises.

21.     Donan issued a report dated May 14, 2025 that confirmed that the centerline of the tornado with wind speeds of 90 mph passed within 1,100 feet south of the Insured Premises, but then also cited a report of 37 mph wind speeds at Nashville International Airport (65 miles east of the Insured Premises).

22.     Donan ultimately concluded that the weather data was unreliable and that on-site collateral indicators would be more reliable. Donan stated there was "[n]o collateral indicators, such as turned antennas, displaced cap flashing, or displaced trees or tree limbs, of high wind." Donan also opined that the roof membranes are not wind-damaged, and that no water intrusion was attributable to a weather-created opening. Donan's conclusions are false. After the storm, there were displaced tree limbs in the parking lot, balcony walkway flashing blew off, the roofs wrinkled and failed, roof scuppers were displaced, and water intrusion invaded the interior. None of this damage existed immediately before the storm.

23.     Defendant denied Plaintiff's claim for insurance proceeds.

24.     In response to the denial, Plaintiff provided Defendant with a pre-loss video taken in 2024 that depicted the roof in good condition without any of the wind damage currently present. Based on that evidence, it is patently obvious that wind damaged the property since the video was taken. Defendant responded on June 27, 2025 that "there is no proof of the date the video was taken," and that "a video taken on the roof is not going to overturn the claims decision."

25.     On or around September 1, 2025, Plaintiff sent Defendant a report from its own engineer, Steve Prosser of Paris, Tennessee. Mr. Prosser opined that the roofing systems at the Insured Premises required complete replacement as a result of the Loss, along with replacement

4

of the balcony flashing and interior water damage repairs. In response, Defendant advised on September 11, 2025 that the denial was being reviewed.

26.     On September 23, 2025, Plaintiff followed-up with Defendant again because no response had been received from Defendant. Defendant replied the following day and promised a response by October 10, 2025.  That date too came and passed with no response so yet additional follow-up communications were sent on October 13 and 27, 2025, begging for consideration of the information submitted.  Defendant ultimately responded in November 2025 with a form letter reaffirming its denial of the claim.

27.     Defendant's assertions regarding the nature and amount of the storm-caused damage are false. Before the storm at issue, there was no wind damage to the roof and there was no water intrusion. After the storm at issue, there was significant wind damage to the roof and substantial water intrusion to numerous hotel rooms.

28.     Rather than responding to the facts and investigating them in any reasonable way, Defendant elected to turn a willfully blind eye to the true facts for its own financial preservation.

29.     On January 14, 2026, Plaintiff sent Defendant a final formal demand for payment and notice of its intent to sue for bad faith if its claim was not honored. Defendant did not respond.

30.     On February 16, 2026, Plaintiff sent Defendant a report from a meteorologist confirming that the wind speeds that impacted the Insured Premises on April 4, 2024 were 65-75 mph and that the EF-1 tornado passed ~200 yards away. Plaintiff also again provided Defendant with pre- and post-loss videos and 3D imagery links showing the interior damage. Defendant has still not responded.

31.     To date, more than 60 days after presentation of Plaintiff's formal demand for payment, Defendant continues to maintain its custom and practice of ignoring the facts. Defendant

has ignored the before and after videos of the roof, the physical evidence on-site, photographs, the factual recitation provided by Plaintiff, and even the fact that the hotel was at all impacted by the storm.

32. To date, Defendant has refused to issue any payment for the Loss.

33. Defendant has failed to indemnify Plaintiff as required by the Policy, and Plaintiff has not been properly compensated for the damage to the Insured Premises.

<u>The Loss is Compensable Under the Policy</u>

34. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

35. Wind damage and resulting water intrusion is covered by the Policy.

36. There is no reasonable coverage dispute.

37. Defendant's refusal to pay Plaintiff the amounts owed to it for the Loss is without justification.

38. Defendant is in material breach of the Policy by failing to fully and adequately pay Plaintiff for its covered losses.

39. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiff under the Policy caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

## **CAUSES OF ACTION**

**<u>Count I – Breach of Contract</u>**

40. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

41. The Policy issued by Defendant is a binding contract and is supported by valid consideration.

42. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant breached its contract with Plaintiff by failing and refusing to fully and promptly pay the amounts owed to Plaintiff as a result of the Loss and as required by the terms of the Policy.

43. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy.

44. Defendant is liable to Plaintiff for its losses.

45. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g.*, *Riad. v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of the claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding the claim for insurance proceeds; (3) unjustly refused and/or failed to fully pay the claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to treat Plaintiff's interests with equal regard to its own; (5) promised prompt action and claim-handling but then failed to provide reasonable and prompt payment for the insured losses; (6) failed and refused to fully and promptly pay Plaintiff's valid claim; (7) forced Plaintiff to file suit in order to enforce its rights under the Policy; (8) utilized a biased outcome-oriented adjuster and engineer with the goal of denying and minimizing Plaintiff's claim; (9) ignored valid portions of Plaintiff's claim for no good reason and with no explanation; (10) refused and failed to obtain all reasonably available information before asserting that it owed no

7

payment to Plaintiff as a result of the Loss; (11) engaged in conduct designed to decrease and minimize the amount to be paid to Plaintiff; (12) ignored video evidence that confirms the roof was not damaged before the storm but was afterwards; and (13) engaged in such other conduct as alleged in this Lawsuit and/or to be shown at trial.

46.     Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy.  Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously and intentionally partially denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff.  Plaintiff seeks, and is entitled to, punitive damages.

**Count II – Statutory Bad Faith**

47.     The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

48.     Defendant's failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than 60 days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss, as required pursuant to the Policy and for which the 25% statutory penalty for bad faith should be invoked.

49.     The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy, and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth above and below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing, or willfully

disregarding the probability of causing, unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim, denied Plaintiff's claim, and withheld monies and benefits rightfully due Plaintiff.

50. On January 14, 2026, Plaintiff gave notice of its intent to sue Defendant for statutory bad faith if its claim was not honored, and as of the filing of this Complaint (more than 60 days following the referenced notice), Defendant has maintained its unlawful denial of Plaintiff's claim.

51. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, specifically but not limited to the allegations set forth in Paragraph 45, which are incorporated by reference, together with the following:

a. Defendant's failure to fully inform Plaintiff of its rights and obligations under the Policy;

b. Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when liability was reasonably clear;

c. Defendant's refusal to pay Plaintiff's claim without conducting a reasonable investigation based on all available information;

d. Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

e. Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

f. Defendant's engaging in acts and practices toward Plaintiff that are contrary to the good faith duties owed to Plaintiff; and

9

g. Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

52. In so acting, Defendant intended to—and did—injure Plaintiff in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award against Defendant as follows:

a) For compensatory damages in an appropriate amount to be determined by the jury;

b) For punitive damages in an appropriate amount to be determined by the jury;

c) For a statutory bad faith penalty of 25%'

d) For consequential damages as a result of Defendant's breach of contract;

e) For all costs incurred by Plaintiff as a result of this action;

f) For pre- and post-judgment interest; and

g) For such other further and general relief as this Court deems just and equitable.

## <u>JURY DEMAND</u>

Plaintiff demands a jury of its peers.

Respectfully submitted,

McWHERTER SCOTT & BOBBITT, PLC

s/ *J. Brandon McWherter* _____
J. BRANDON McWHERTER #21600
brandon@msb.law
109 Westpark Dr., Ste. 260
Brentwood, Tennessee 37027
Telephone: (615) 354-1144
Facsimile: (731) 664-1540

CLINTON H. SCOTT #23008
54 Exeter Road, Suite D
Jackson, Tennessee 38305
Telephone: (731) 664-1340
Facsimile: (731) 664-1540
clint@msb.law

*Attorneys for Plaintiff*

11